SURGIKOS, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 83–12–01808

(Decided March 18, 1988)

*Rogers & Wells (Nina Bang-Jensen, Roger A. Clark, Robert* v. *McIntyre, Eugene T. Rossides* and *Charlotte Lloyd Walkup),* for plaintiff.

*John R. Bolton,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, United States Department of Justice *(Judith M. Barzilay* and *Saul Davis),* for defendant.

DiCarlo, *Judge:* Plaintiff challenges the United States Customs Service (Customs) classification of surgical sheets under item 256.87 of the Tariff Schedules of the United States (TSUS), dutiable at 5.6% *ad valorem,* claiming the sheets are eligible for partial duty free treatment under item 807.00, TSUS. The Court concludes the surgical sheets do not meet all the criteria necessary for the partial duty free treatment under item 807.00, TSUS, and affirms Customs' classification.

The surgical sheets at issue are known as "Laparotomy-T Sheets with I.V. Armboard Drapes." Based upon the stipulations, exhibits, and testimony at trial, the Court finds that the sheets are designed to be placed on a patient's body before surgery in order to maintain sterile operating conditions during surgery. The sheets contain one rectangular opening, called a fenestration, through which a doctor may perform surgical operations or other procedures.

The sheets were assembled in Mexico from fabricated components produced in the United States. The process in Mexico is described in joint exhibit A to schedule C of the pretrial order:

> three 3″ × 4″ tabs of Drisite (Honshu)/Fabric 450, containing two holes each, described as 2-holed tubing tabs, are glued to the edge of a sheet of 18″ × 28″ Drisite (Honshu). A sheet of SBR foam, a 12″ × 18″ sponge foam pad with a reinforced backing, is glued onto the edge of the Drisite (Honshu), with a 1″ overlap onto the Drisite (Honshu). Two tabs of Drisite (Honshu)/Fabric 450 are glued to the edges of the foam. The SBR foam/Drisite (Honshu) piece is glued onto a base sheet of 72″ × 80″ Fabric 450 forming a tail. A rectangular fenestration 12″ × 3″ with 1″ diagonal corner slits is then die cut through the Drisite (Honshu) and the base sheet. Alignment for proper placement of the Drisite (Honshu) onto the base sheet is provided by tape indicators affixed to the table on which such operations occur. The die was positioned with a template aligned to a corner of the Honshu. The tail is then glued, edge overlapping edge, to a base sheet of 36″ × 101″ Fabric 450, and the tail is finish folded. Two 14-⅜″ × 28″ Fabric 450 flaps are glued to the base sheet. The rest of the sheet is then finish folded according to specifications to permit aseptic application of the sheet to the patient.

Finish folding, also known as "functional folding," is not ordinary folding for packaging purposes. The unique folds are strategically positioned to aid the surgical team in particular operations to avoid contamination of the surgical site and the sheet itself. R. 8–19, 24, 287–94; Pretrial Order, Schedule C, ¶¶15, 28.

To be eligible for partial duty free treatment, subsection (c) of item 807.00, TSUS, requires that the United States components not be "advanced in value or improved in condition abroad except by being assembled and except by operations incidental to the assembly process such as cleaning, lubricating, and painting * * *." That

fenestration and finish folding advanced the value and improved the condition of the assembled components is not contested. The question presented is whether fenestration and finish folding are operations "incidental to the assembly process."

Plaintiff first argues that finish folding is not an operation separate from the assembly process but rather is an actual act in assembly of this merchandise. The Court disagrees.

Based upon the stipulations and trial testimony, the Court finds that assembly of this merchandise involves the gluing of certain pieces of material together. In the Court's view, the surgical sheets are completely assembled after all gluing takes place. Assembly is therefore complete whether or not the merchandise is also folded in a specified manner to enhance its utility. Thus finish folding is an operation other than the actual assembly of these surgical sheets.

In deciding whether fenestration and finish folding are operations incidental to the assembly process, the Court is guided by *United States* v. *Mast Indus.,* 69 CCPA 47, 53–54, 668 F.2d 501, 506 (1981), which held that operations are incidental to assembly within the meaning of subsection (c) of item 807.00, TSUS, if such operations are determined to be of a "minor nature." *See also United States* v. *Oxford Indus.,* 69 CCPA 55, 668 F.2d 507 (1981).

After balancing all the relevant factors, the *Mast* court determined that buttonholing and pocket slitting operations were incidental to the assembly of women's pants. The factors found in *Mast* to be relevant to the determination were:

> (1) Whether the cost of the operation relative to the cost of the affected component and the time required by the operation relative to the time required for assembly of the whole article were such that the operation may be considered "minor." * * *
>
> (2) Whether the operations in question were necessary to the assembly process, as were the slots and holes in [*Miles* v. *United States,* 65 CCPA 32, C.A.D. 1202, 567 F.2d 979 (1978)] * * *.
>
> (3) Whether the operations were so related to assembly that they were logically performed during assembly * * *.

*Mast,* 69 CCPA at 54, 668 F.2d at 506. Also, according to the *Mast* court, "[a]nother factor not addressed by the parties would be whether economic or other practical considerations dictate that the operations be performed concurrently with assembly." *Id.* n.7. The Court finds these factors, among others, are also relevant to the determination of whether fenestration and finish folding are incidental to the assembly process of surgical sheets.

The exhibits and trial testimony show that the cost of the components when shipped to Mexico is $3.03. *See* Plaintiff's Exhibit 3b [2.88 (starting material) + 0.03 (starting labor) + 0.12 (starting burden) = 3.03]. Fenestration and finish folding costs are $.34. *Id. See also* R. 196 (42% of post-fenestration is finish folding) [.31 (post-fenestration labor) + .46 (post-fenestration burden) = .77, .77 × 42% = .32, .32 + .02 (labor and burden of fenestration) = .34]. Thus the

costs of these operations are 11.2% ($.34/$3.03) of the cost of the affected component.

In considering costs comparisons, the Court also finds relevant the relationship between the costs of fenestration and finish folding and the total value added to the components in Mexico. The cost of the final product is $4.76. *See* Plaintiff's Exhibit 3b. Deducting the cost of components prior to shipment to Mexico ($3.03) from the final cost ($4.76) indicates the value added in Mexico is $1.73. Of that value added in Mexico, the costs of fenestration and finish folding is one-fifth, 20% ($.34/$1.73). Deducting the cost of other United States material added in Mexico ($.51), *Id.* [3.39 (final material) − 2.88 (starting material) = .51], from the total value added in Mexico ($1.73 − $.51 = $1.22) and then comparing the costs of fenestration and finish folding indicates that these operations are over one-fourth, 28% ($.34/$1.22), of the labor-related activities in Mexico. These several costs comparisons indicate that fenestration and finish folding are not operations of a minor nature.

The average time required for assembly, including gluing and moving the materials, is 273.46 seconds, and the average time needed to fenestrate and finish fold is 126.14 seconds. *See* Plaintiff's Exhibit 2 [42% × 280.1 (post-fenestration time) = 117.64, 117.64 + 8.5 (fenestration time) = 126.14, 399.6 (total time per sheet) − 126.14 = 273.46]. Thus fenestration and finish folding are equal to approximately half of the time required to assemble the whole article. Comparing fenestration and finish folding (126.14 seconds) to the total time involved in Mexico for one sheet (399.6 seconds) shows that these operations amount to almost one-third, 32% (126.14 seconds/399.6 seconds), of the time involved. By either time comparison, fenestration and finish folding are not operations of a minor nature.

The Court must balance these cost and time relationships with the other relevant factors. The Court first notes that unlike the slots and holes in *Miles,* which had to be drilled into steel beams before boxcars could be assembled, fenestration and finish folding are not necessary prerequisites to the assembly of these surgical sheets. The materials could be glued together, assembled, even if the sheets were never fenestrated or finish folded.

Nor is the Court persuaded that these operations are so related to assembly that they were logically performed during assembly. Fenestration involves the use of a machine to cut through several pieces of material, and finish folding is merely folding of the sheets in a specified manner. Neither operation is related directly to the gluing procedures that the Court has found constitute assembly of this merchandise.

The other factor noted by *Mast,* but not elaborated on, concerns "whether economic or other practical considerations *dictate* that the operations be performed concurrently with assembly." 69 CCPA

at 543 n.7, 668 F.2d at 506 n.7 (emphasis added). Plaintiff here makes much of the fact that fenestration is best performed after the two sheets being cut have been properly aligned and glued together. Plaintiff points to the government's concession that if the sheets were separately fenestrated before gluing then precise alignment of the fenestration "would be very difficult and the sterility of the sheet could be compromised." Pretrial Order, Schedule C, ¶15. Plaintiff argues that it is also practical to finish fold part of the sheet just prior to gluing of the two 14-⅜" × 28" Fabric 450 flaps to the base sheet, since the sheet must be gathered anyway in order to facilitate that gluing.

The Court accepts that for practical reasons it may be best to perform these operations pursuant to the manner in which plaintiff has established. The Court believes plaintiff is best able to evaluate its own product in determining how best to produce a marketable item.

The Court is not persuaded, however, that these practical considerations "dictate" that these sheets must be produced in this exact manner. Testimony at trial indicated that the sheets could be fenestrated prior to gluing and be sterilized thereafter. R. 58–59. Also, any folding which would gather the tail of the base sheet prior to gluing of the two flaps would suffice. R. 261–62.

Weighing the item and cost of fenestration and finish folding with all other factors this Court has deemed relevant, it is determined that these operations are not "incidental to the assembly process" within the meaning of subsection (c) of item 807.00, TSUS. The operations are not of a minor nature.

The Court holds that plaintiff's merchandise is not eligible for partial duty free treatment under item 807.00, TSUS. Plaintiff has failed to overcome the presumption in favor of Customs' classification of these surgical sheets under item 256.87, TSUS. That classification is therefore affirmed. The action is dismissed. Judgment will be entered accordingly.